UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMEL M. LEGREE,

No. 6:20-cv-06059-CJS
DECISION AND ORDER

                                Petitioner,

     -vs-

JAMES P. THOMPSON,

                            Respondent.

---

## APPEARANCES

For Petitioner:              Jamel M. Legree, *Pro Se*
Collins Correctional Facility
Box 340
Collins, NY 14034-0340

For Respondent:           Assistant Deputy Solicitor General Andrew W. Amend
Assistant Attorney General of Counsel Hanna Stith Long
Attorney General of State of New York
28 Liberty Street
New York, New York 10005

## INTRODUCTION

Jamel M. Legree ("Legree" or "Petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* ECF No. 1.  Legree challenges the constitutionality of the judgment entered against him on March 20, 2018, in New York State Supreme Court, Monroe County (Moran, J.), following his guilty plea to second-degree criminal possession of a weapon (New York Penal Law ("P.L.") § 265.03(3).  For the reasons below, the request for a writ of a habeas corpus is denied, and the petition is dismissed.

## BACKGROUND

## I.      The Crime and Pre-Plea Proceedings

On October 17, 2017, several members of the Rochester Police Department ("RPD") responded to the area of 34 Teresa Street following a 911 call for a man with a gun.  SCR: 10, 138.[1]  When they arrived at the scene, the officers saw a man holding a gun in his left hand walking toward a green Chevy Equinox.  When officers tried to stop the man, he fled.  Officer Stanley Kaminski ("Kaminski") observed that as the man ran toward the south side of the residence at 34 Teresa Street, he "removed a black object in the shape of a handgun from the front portion of his torso."  SCR: 138.  The man kept running but then surrendered in a nearby yard at 314 Bay Street and was taken into custody; at that time, Kaminski "did not observe [the suspect] in possession in the above mentioned object in the shape of a handgun."  *Id.*  Other officers searched the suspect's immediate path of travel and recovered a handgun on the roof of a shed at 34 Teresa Street.  *Id.*; *see also* SCR: 144.

While he was being transported to the police station, Legree—unprompted—told Officer Daniel Rizzo that he is right-handed and it was not possible for him to be carrying a gun in his left hand.  SCR: 10.  At the station, Officer Paul Helfer read the *Miranda* warnings to Legree who waived his rights and agreed to speak to Helfer.  SCR: 11.  Legree said that he ran from the officers because he was rolling a "blunt" (i.e., a marijuana cigarette) and thought he had an outstanding warrant.  *Id.*  When Helfer told Legree he had no warrants, Legree said he suspected his girlfriend's mother of putting a harassment warrant out for him.  *Id.*  Helfer told Legree that the officer who had been chasing him saw him with a gun in his left hand; Legree denied having any gun.  *Id.*  Helfer accused Legree

---

[1] Citations to "SCR:" refer to the Bates-stamped page numbers of the state court records filed by Respondent.  ECF No. 12-1.

of intending to shoot up the house where his girlfriend and her mother lived, which Legree denied.  *Id.*  He eventually asked for a lawyer and the interview was terminated.  *Id.*

Legree was charged in a felony complaint with second-degree criminal possession of a weapon (P.L. § 265.03(3), a class C felony); third-degree criminal possession of weapon (P.L. § 265.02(1), a class D felony); and unlawful possession of marijuana (P.L. § 221.05, a violation).  *See* SCR: 4-5.

At Legree's arraignment on October 18, 2017, the prosecutor apprised Legree of his right to testify at the upcoming grand jury on October 20, 2017.  SCR: 1, 85.  By letter, Legree's assigned attorney notified the prosecutor that Legree wished to testify, SCR: 140, and the prosecutor arranged for Legree's transport.  SCR: 85.  On October 19, 2017, at about 4:47 p.m., defense counsel notified the prosecutor via email that Legree was not going to testify.  SCR: 85, 88.

The grand jury returned an indictment on October 20, 2017, charging Legree with second-degree criminal possession of a weapon (P.L. § 265.03(3)), based on his knowing possession of a loaded firearm (a 32 Auto (7.65mm) caliber, F.N. (Fabrique Nationale) 1900 semiautomatic pistol) on October 17, 2017, in a location that was not his home or place of business.  SCR: 8.  The indictment further alleged that such offense was an armed felony offense as defined in New York Criminal Procedure Law ("C.P.L.") § 1.20(41).  *Id.*

Subsequently, Legree retained a new attorney who moved to dismiss the indictment on the ground that the prosecutor failed to allow Legree to testify before the grand jury.  SCR: 35, 47.  In opposition to the motion, the prosecutor submitted a copy of

the email correspondence with Legree's previous attorney, SCR: 85, 88, which refuted the allegations in the motion to dismiss.  The trial court denied the motion.  SCR: 92.

On January 8, 2018, the trial court held a suppression hearing regarding the admissibility of Legree's custodial statements to the police.  SCR: 49-80.[2]

## II.     The Plea

On February 15, 2018, Legree appeared with counsel before Monroe County Supreme Court Justice Thomas Moran ("trial court") and accepted the prosecutor's plea offer, which entailed pleading guilty to count one (P.L. § 265.03(3))[3] in exchange for a sentence of five years' imprisonment plus five years' post-release supervision.  SCR: 100. After a colloquy, Legree entered a guilty plea.  SCR: 101-06.  On March 20, 2018, Legree was sentenced as promised to five years' imprisonment plus five years' post-release supervision.  SCR: 110-17.

## III.    Post-Judgment Proceedings in State Court

Proceeding *pro se*, Legree obtained permission to file a late notice of appeal.  SCR: 118-19.  The Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") assigned counsel and extended the deadline for perfecting the appeal until September 21, 2020.  SCR: 120-27.

On June 20, 2019, Legree filed a *pro se* motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in New York State Supreme Court, Monroe County ("440 court").  SCR: 128-44.  He asserted that his first attorney was ineffective because

---

[2] The state court records provided by Respondent do not contain a decision regarding the suppression motion.

[3] "Pursuant to Penal Law § 265.03(3), in order to find a person guilty of criminal possession of a weapon in the second degree . . . , the People must establish that he or she possessed a loaded firearm outside of his or her home or place of business."  *People v. Calafell*, 211 A.D.3d 1114, 1115 (3d Dep't 2022).

she failed to have him produced for the grand jury proceeding; and that his second attorney failed to communicate with him regularly, failed to investigate the lack of DNA and fingerprint evidence on the weapon he was accused of possessing unlawfully, and failed to file a motion to suppress the weapon.  SCR: 130.  He also argued that there was no evidence that he possessed a firearm because he did not have it on his person when he was arrested.  He pointed to the investigative report by Kaminski, stating that although he saw Legree holding a gun-shaped object while Legree was fleeing, he did not see it in Legree's hands when the officers took him into custody.

In a decision dated August 16, 2019, the 440 court denied the motion without a hearing and denied appointment of counsel.  SCR: 166-70.  The 440 court noted that although Kaminski did not see Legree with the object resembling a gun after Legree passed 34 Teresa Street, the weapon was recovered on the roof of the attached shed at that address, in Legree's line of flight, "such that it was plausible that [Legree] discarded the handgun at 34 Teresa Street as he was pursued."  SCR: 168.  Moreover, "the location from which the handgun was retrieved [was] corroborated by [Legree's] own admission [during his plea allocution], and not specifically refuted by [him]."  *Id.*

As for the allegation that counsel failed to ensure Legree's testimony before the grand jury, the 440 court found that the argument "contain[ed] matters that appear on the record, as it was included in the People's answering affirmation for a five (5) day dismissal [of the indictment] motion, and should be denied pursuant to CPL §440.10(2)(b)."  SCR: 169.

With regard to Legree's claim that defense counsel was ineffective for failing to request a suppression hearing as to DNA or fingerprint evidence on the handgun, the 440

court found that Legree's argument was contradicted by the exhibits submitted in support of the motion—the DNA report from the Monroe County Crime Laboratory, SCR: 142-43, and the RPD Technicians Evidence report, SCR: 144.  As the 440 court found, "[b]oth documents indicate[d] that the[re] was not a suitable DNA sample for comparison nor were any 'prints' found on the gun pursuant to the RPD Technician's Report, [and] thus [there was] no evidence to assist in Defendant's prosecution."  SCR: 169.  Since Legree was "asking for his counsel to request the suppression of evidence that does not exist," the 440 court rejected the argument as "pure folly, based in pure speculation, not substantiated by sworn allegations of fact or proof of same, and not persuasive [such] that it would have changed the outcome of the verdict."  *Id.*

Legree sought leave to appeal to the Appellate Division, SCR 171-224, which was denied on October 22, 2019.  SCR: 231.

## V.   Federal Habeas Proceeding

Legree's application for a writ of habeas corpus, ECF No. 1, consists of several different pleadings—a petition, a "Notice of Intent Civil Lawsuit § 1983 Federal Rules 15," and a "42 USC § 4283 [sic][4] Due-Process Complaint."  *Id.* at 1-6.

In the pleading titled, "Petition," Legree delineates two grounds for relief.  Under Ground One, *id.* at 2, he asserts several different claims: (1) he was denied his right to testify before the grand jury, *id.* at 2, 5; (2) defense counsel waived his right to testify without his permission, *id.* at 2; and (3) even if he did give defense counsel permission to waive his grand jury appearance, her email notifying the prosecutor that he did not wish to testify failed to comply with New York General Obligations Law § 5-701, *id.* at 2, 5.

---

[4] The Court assumes that Petitioner intended to cite 42 U.S.C. § 1983.

Under Ground Two, Legree asserts that there was no DNA evidence linking him to the recovered gun, and the police officers therefore had no basis to say that they saw him holding a gun.  *Id.* at 2.

In the "Due Process Complaint," Legree reiterates his allegations concerning trial counsel's failure to ensure he testified before the grand jury.  *Id.* at 5.  He also asserts that "[t]he fact that the Assigned Counsel, District Attorney, and Monroe County, County Court Judge allowed [him] to enter a plea of guilty, after he was refused his right to testify before the said grand jury, is a clear violation of Due-Process."  *Id.* at 6.

Liberally construing Legree's *pro se* papers as required, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court interprets Legree's application for a writ of habeas corpus as asserting the following grounds for relief:  (1) he was denied his right to testify before the grand jury; (2) his original attorney was ineffective for waiving his appearance before the grand jury; (3) the lack of DNA evidence proved that he did not unlawfully possess the gun; (4) his guilty plea violated due process because he did not testify before the grand jury; and (5) there was insufficient evidence to support the indictment, which was based on false testimony by the police officers.

Respondent filed a response, ECF No. 12, and a memorandum of law in opposition, ECF No. 13.  Respondent asserts that all of Legree's claims are completely unexhausted and should be dismissed under the authority of 28 U.S.C. § 2254(b)(2) because they are plainly meritless.  ECF No. 13 at 13-15.  Alternatively, Respondent contends that the petition should be dismissed without prejudice because—at least at the time Respondent filed his response—Legree's judgment had not become final and the

statute of limitations had not commenced running under 28 U.S.C. § 2244(d)(1).  *Id.* at 15-16.

Legree sought and received two extensions of time to file a reply.  ECF Nos. 14, 15, 16, 19.  In his reply, ECF No. 17, he does not address the exhaustion defense raised by Respondent.  Instead, he lists eleven "questions raised," most of which appear to be new habeas claims.  *Id.* at 2.  Among other things, Legree asserts that his equal protection rights were violated by the denial of his right to testify before the grand jury; and that his original attorney was ineffective because she failed to conduct appropriate investigations, did not confer in a timely fashion with him, did not comply with C.P.L. § 190.50(5)(a) when she notified the prosecutor about his decision not to testify, did not obtain permission from the trial court to effectuate service of process by e-mail, failed to comply with New York Civil Practice Law and Rules §§ 1207 and 2103, had a conflict of interest, and failed to comply with unspecified standards issued by the American Bar Association.  *Id.*; *see also id.* at 3-11.

Respondent submitted a letter on July 9, 2021, updating the Court on the status of Legree's state court proceedings.  ECF No. 21.  Respondent indicated that Legree's claims remained unexhausted because although he filed a second C.P.L. § 440.10 motion in state court, he failed to seek leave to appeal after it was denied, and his time to do so expired in April 2021.  *Id.* at 2 (citing N.Y. Crim. Proc. Law §§ 450.15(1), 460.10(4)(a)).  Respondent also indicated that Legree had not perfected his direct appeal and that, according to the Appellate Division, the deadline for Legree's assigned appellate counsel to do so was September 15, 2021.  Respondent also objected to Legree's attempt to

assert new grounds for habeas relief in his reply and argued that they, too, are unexhausted.

The "inmate locator" website maintained by DOCCS shows that Legree was released to parole supervision on November 15, 2021.[5]  He has not updated the Court with his post-release address.

## DISCUSSION

### I.  Jurisdiction

The federal habeas statute applicable to a petitioner challenging a state-court judgment "requir[es] that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (citing 28 U.S.C. § 2254(a)).  However, a federal court's jurisdiction to hear a § 2254 petition is not defeated even if the petitioner is later paroled, deported or otherwise released from custody.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("The District Court's conclusion that Spencer's release from prison caused his petition to be moot because it no longer satisfied the 'in custody' requirement of the habeas statute was in error.  Spencer was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires.");  other citations omitted).  When Legree commenced this habeas proceeding, he still was incarcerated at Collins Correctional Facility and serving the sentence imposed on the conviction he attacks in the petition.  Accordingly, he has fulfilled the habeas statute's "in custody" requirement.

---

[5] *See* New York State Department of Corrections and Community Supervision, Find an Offender, Incarcerated Lookup, *https://nysdoccslookup.doccs.ny.gov/* (last accessed Nov. 15, 2023) (displaying search results for Jamel M. Legree, DIN: 18B0875).

A related but separate jurisdictional question is whether the petition still presents a live case or controversy or whether it has become moot.  "Article III of the Constitution provides that the 'judicial power shall extend to all Cases' and 'Controversies.'"  *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting U.S. Const. art. III, § 2).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted).

"[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision."  *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citation omitted).  "A criminal case does not necessarily become moot when the convict finishes serving the sentence.  Instead, the case will remain a live case or controversy if there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction."  *Id.* (quoting *Spencer*, 523 U.S. at 7).

Although Legree is no longer serving the sentence imposed on his conviction for second-degree criminal possession of a weapon, the petition is not moot because it challenges the constitutionality of that felony conviction.  *See*, *e.g.*, *Anderson v. Smith*, 751 F.2d 96, 100 (2d Cir. 1984) ("Clearly, Anderson's [habeas] challenges [to his attempted robbery conviction] are not moot, since a felony conviction carries certain 'collateral consequences.' . . . For example, a convicted felon cannot obtain a license from some businesses, . . . or serve jury duty[.]") (quotation and internal citations omitted).  Therefore, it presents a justiciable case or controversy amenable to habeas review.

## II.     Claims in Petitioner's Reply

The Rules Governing Section 2254 Cases in the United States District Courts provide, in part, that "[t]he petition must . . . specify all grounds for relief available to the petitioner."   Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts 28 U.S.C.A. *foll.* § 2254.   "In light of this Rule, it has been recognized that a traverse [or reply] is not the proper pleading in which to raise additional grounds for habeas relief."   *Jones v. Artus*, 615 F. Supp. 2d 77, 85 (W.D.N.Y. 2009) (citing *Parker v. Duncan*, No. 03–CV–0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*, 255 F. App'x 565 (2d Cir. 2007)).   "To raise additional grounds, a petitioner must file an amended petition to provide adequate notice to the state of additional claims."   *Howard v. Graham*, No. 905-CV-1582 LEK/DRH, 2008 WL 3925466, at *1 n.3 (N.D.N.Y. Aug. 20, 2008) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

Legree did not seek permission from the Court to add new grounds for habeas relief in his reply.   Therefore, any new claims asserted in the reply are not properly before the Court, and will not be considered.   *See*, *e.g.*, *Voymas v. Unger*, No. 10-CV-6045 MAT, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011) ("[T]he Court declines to consider any new 'stand-alone' or 'freestanding' claims of actual innocence or ineffective assistance of appellate counsel in his Traverse."); *Simpson v. United States*, No. 5:00-CR-373, 2005 WL 3159657, at *5 (N.D.N.Y. Nov. 25, 2005) ("[The] Court will not consider the claims that Petitioner raised for the first time in his Traverse as a basis for awarding him relief in this action.").

## III.     Exhaustion

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(3), (c)).  In general, the exhaustion requirement is satisfied "when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001).

Respondent argues that all of Legree's claims are unexhausted because he "has yet to present his grand jury and ineffective assistance claims on his direct appeal in state court."  ECF No. 13 at 13-14.  "Although a 'complete round' of the state's review process typically involves a defendant's direct appeal, state law can provide an alternate avenue for relief."  *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 134 (W.D.N.Y. 2000).  In fact, "New York courts uniformly hold that where . . . . an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim *must* be brought in collateral proceedings."  *Pierotti v. Walsh*, 834 F.3d 171,178 (2d Cir. 2016) (emphasis in original) (citing *People v. Brown*, 45 N.Y.2d 852, 853-54 (1978)).

It is unnecessary, however, for the Court to spend further time on the exhaustion and procedural default issues presented by Legree's petition.  "'[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.'"  *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011) (alteration in original) (quoting *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 439

(S.D.N.Y. 2003); citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")). Legree's habeas claims are either not cognizable, plainly meritless, or both.  In the interest of judicial efficiency, the Court will bypass the procedural issues and proceed directly to consider the substance of the petition.

## IV.   Merits of the Petition

### A.  Denial of the Right to Testify Before the Grand Jury

Under Ground One, Legree asserts that he was denied his right to testify before the grand jury.  *See* ECF No. 1 at 2, 5.  A New York State defendant's "right to testify before the grand jury is not a federal constitutional right; rather, it is a statutorily created right in New York."  *Lucius v. Filion*, 431 F. Supp. 2d 343, 346 (W.D.N.Y. 2006) (citing N.Y. Crim. Proc. Law § 190.50(5)(a) (stating, in pertinent part, that "[w] hen a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf")); *see also Hoeft v. D.E. Laclair*, No. 08-CV-6060 VEB, 2011 WL 1198763, at *6 (W.D.N.Y. Mar. 28, 2011) ("There is no constitutional right to a grand jury in a state criminal prosecution; rather, such a right is a creature of statute." (citing *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990)).

Further, "[t]he Fifth Amendment right of a federal defendant to indictment by a grand jury is not incorporated by the due process clause of the Fourteenth Amendment

and thus does not apply to the states." *Hoeft*, 2011 WL 1198763, at *6 (citing *Mirrer v. Smyley*, 703 F. Supp. 10, 11–12 (S.D.N.Y. 1989); other citations omitted)).

Legree's claim that he was denied his right to testify before the grand jury "is not cognizable on federal habeas review because the right to testify before the grand jury is not a matter of federal constitutional law." *Lucius*, 431 F. Supp. 2d at 346 (citing 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")).

### B. Insufficient Evidence to Support the Indictment

Under Ground Two of the Petition, Legree states that:

> [t]he DNA test that was performed on the gun that was recovered, and the DNA test that was performed on the cup that this Petitioner drank from [at the police station after his arrest], did not match to any DNA that was to be found on the gun.  No fingerprints were recovered from the gun, so for the Rochester Police Department to have said they seen [sic] this Petitioner throw the gun, there would have to be this Petitioners [sic] fingerprints on said gun.

ECF No. 1 at 2.  He appears to be asserting that the lack of DNA and fingerprint evidence shows he did not possess the gun and therefore is not guilty.

While a freestanding claim of actual innocence has been authorized under C.P.L. § 440.10(1)(h) by some intermediate appellate courts in New York State, *see People v. Fraser*, 165 A.D.3d 697, 699 (2d Dep't 2018) (collecting cases), the Supreme Court has yet to recognize a "federal constitutional " right to be released upon proof of 'actual innocence.'" *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009); *see*

*also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").  As the Supreme Court has stated,

> [c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . .This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993).

Even assuming that a "freestanding" claim of actual innocence were a cognizable basis for habeas relief, Legree has not stated a colorable "gateway" claim of actual innocence.  This defeats his ability to satisfy the more demanding showing a "freestanding" actual innocence claim would require.  *See House v. Bell*, 547 U.S. 518, 555 (2006) (stating that, even assuming that a petitioner may assert a freestanding actual innocence claim, he must make an "extraordinarily high" threshold showing, and "at the least" offer "more convincing proof of innocence than [under] *Schlup* [*v. Delo*, 513 U.S. 298 (1995)]") (quotation omitted).

To establish a "gateway" claim of actual innocence, *Schlup* requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  513 U.S. at 324. Legree has not come forward with any "new" evidence at all; the police reports and forensic testing results upon which he relies were available at the time of his guilty plea. That is fatal to his ability to fulfill the *Schlup* standard.  *See Smalls v. Kaplan*, No. 9:17-CV-0393 (TJM), 2018 WL 11473769, at *22 (N.D.N.Y. Jan. 2, 2018) ("Petitioner points to no new, previously unavailable evidence of her factual innocence, but rather relies upon

the existing pretrial record.  This deficiency is fatal to her actual innocence claim." (citing *Schlup*, 513 U.S. at 324; *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004)).

Moreover, a habeas court must consider a petitioner's guilty plea in the context of making an actual innocence determination.  *See Menefee*, 391 F.3d at 168–69 (finding that when evaluating the defendant's actual innocence claim, the district court clearly erred in discounting the defendant's admission of guilt at his plea allocution (citing *Rosario v. United States*, 164 F.3d 729, 734 (2d Cir. 1998) (considering petitioners' inculpatory statements made during plea allocution in determining whether no reasonable juror would find petitioners guilty)).  "Statements made by a defendant at a plea hearing constitute a 'formidable barrier' that cannot be easily overcome in subsequent collateral proceedings because '[s]olemn declarations in open court carry a strong presumption of verity.'"  *Smalls*, 2018 WL 11473769, at *10 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

At the plea hearing, Legree admitted under oath that at around 6:46 p.m. on October 17, 2017, he was in the area of 34 Teresa Street, which is not his home or place of business; and that he possessed the loaded semiautomatic pistol described in the indictment.  SCR: 104-05.  Legree did not dispute the Monroe County Crime Laboratory's conclusion that the pistol was operable, i.e., that it was able to fire the ammunition with which it was loaded.  SCR: 105.  Legree then entered a plea of "guilty" to the sole count of the indictment, second-degree criminal possession of a weapon.  SCR: 105-06.

Notably, Legree has never moved to withdraw his guilty plea or claimed that he lied under oath.  In short, he has provided no basis to "overturn the weighty presumptions favoring the veracity of a defendant's sworn plea of guilty."  *Doe*, 391 F.3d at 173; *see*

*also Pleasant v. Capra*, No. 116CV09842LAPSDA, 2018 WL 9539170, at *8 (S.D.N.Y. Aug. 1, 2018) ("Pleasant's 'bald, unsupported assertion of innocence plainly does not qualify.'  This is especially true given his admission to the charged crimes via guilty plea.") (quotation omitted), *report and recommendation adopted*, No. 16-CV-9842 (LAP), 2018 WL 9539116 (S.D.N.Y. Sept. 6, 2018); *Himes v. Superintendent, Gowanda Corr. Facility*, No. 9:03-CV-1419 (TJM), 2006 WL 1742675, at *5 (N.D.N.Y. June 22, 2006) ("Petitioner cannot establish that he is actually innocent of the crime for which he was convicted because during his guilty plea he admitted his guilt under oath.").

Given the lack of any Supreme Court precedent recognizing a "freestanding" actual innocence claim as a basis for release from custody pursuant to § 2254, the Court finds that the allegations in Ground Two do not state a cognizable claim.  Even if a freestanding actual innocence claim were cognizable on habeas review, Legree has presented no new evidence of his actual, factual innocence, and therefore he cannot meet the *Schlup* standard for gateway actual innocence claims.  Because Legree cannot meet the already demanding *Schlup* standard, he necessarily cannot meet the even more demanding hypothetical standard that the Supreme Court has said a freestanding claim of actual innocence would entail.

### C.  Ineffective Assistance of Counsel

Under Ground One, Legree asserts that his original attorney was ineffective because she waived his right to testify before the grand jury without his permission.  ECF No. 1 at 2.  He further claims that even if he did give counsel permission to waive his

17

grand jury appearance, her email notifying the prosecutor that he did not wish to testify failed to comply with New York General Obligations Law § 5-701.[6]  *Id.* at 2, 5.

The Supreme Court has held "that the two-part *Strickland v. Washington* [466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  The petitioner must show that counsel's constitutionally ineffective performance affected the plea process such that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.  On the record before the Court, Legree cannot establish deficient performance by counsel or resultant prejudice.

As a general matter, federal and state courts in New York have consistently held that defense counsel's failure to ensure that the defendant testifies before the grand jury, standing alone, does not justify a finding of ineffectiveness.  *Davis v. Mantello*, 42 F. App'x 488, 491 n.1 (2d Cir. 2002) (unpublished opn.) (citing *Kohler v. Kelly*, 890 F. Supp. 207, 213 (W.D.N.Y. 1994) ("[C]ounsel's failure to secure his right to testify before the grand jury does not, by itself, establish ineffective assistance of counsel."); *People v. Hunter*, 169 A.D.2d 538, 539 (1st Dep't 1991) ("Nor would counsel's failure to secure defendant's right to testify before the grand jury, without more, demonstrate ineffective assistance of counsel"); *People v. Hamlin*, 153 A.D.2d 644 (2d Dep't 1989) (same)).

---

[6] "The New York General Obligations Law sets forth the requirements of the Statute of Frauds," which "decrees that certain promises and agreements are unenforceable absent a writing signed by the party to be charged." *Philips Credit Corp. v. Regent Health Grp., Inc.*, 953 F. Supp. 482, 516 (S.D.N.Y. 1997) (citing N.Y. Gen. Oblig. Law § 5-701(a)(1) (providing in relevant part the "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement or undertaking: 1. [b]y its terms is not to be performed within one year from the making thereof . . .").

Even assuming that counsel did not obtain Legree's permission to waive his grand jury appearance, it was not an objectively unreasonable decision on counsel's part. Placing Legree on the stand before the grand jury risked exposing him to potentially damaging cross-examination about his prior felony convictions and post-arrest statements to the police.  *See*, *e.g.*, *Hutchings v. Herbert*, 260 F. Supp. 2d 571, 578 (W.D.N.Y. 2003) ("Had Hutchings testified before the grand jury he would have been cross-examined about his criminal record, which included several felony convictions.  It is difficult to believe that by his testimony Hutchings could have helped himself in any respect.  Certainly it was a reasonable tactic for defense counsel to have strongly advised Hutchings not to appear."); *Sam v. Brown*, No. 00-CV-4170JG, 2002 WL 31102644, at *4 (E.D.N.Y. Sept. 10, 2002) ("Although Sam argues that counsel should have had him testify at the grand jury, subjecting a target in Sam's position to interrogation before the grand jury is an extremely risky tactic.  There is often little to be gained by it, and much to lose.").

Moreover, Legree cannot demonstrate prejudice as a result of counsel's performance.  The only specific item of information he claims he would have provided to the grand jury is that Ashley Rivera, the alleged 911 caller, lied to the police about seeing him with a gun because she was angry at him.  *See* ECF No. 17 at 5.  That testimony would have done nothing to undermine the police officers' direct observations of Legree once they arrived on the scene and their recovery of the pistol from a location in his direct line of flight.  There is simply no possibility Legree would not have been indicted by the grand jury had he testified.  Because Legree has not shown that counsel's performance

was objectively unreasonable or that it had any effect on the grand jury's decision to indict him, his ineffective assistance claim fails.

### D.    Guilty Plea in Violation of Due Process

Legree contends that his guilty plea violated due process because he was denied his right to testify before the grand jury.  *See* ECF No. 1 at 5-6.  "It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently."  *Wilson v. McGinnis,* 413 F.3d 196, 199 (2d Cir. 2005).  A plea "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."  *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing *Brady v. United States*, 397 U.S. 742, 750 (1970)).  "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the *consequences* of his plea, even if only in a fairly rudimentary way."  *Id.* (emphasis supplied) (citing *Brady*, 397 U.S. at 750).  On the record before the Court, Legree cannot demonstrate that his guilty plea violated due process.

At the plea hearing, the trial court correctly advised Legree that he was giving up his rights under the federal constitution to have a jury trial, to remain silent and not be "force[d] . . . to say anything against [him]self," and to have his defense attorney cross-examine witnesses and "put in a case on [his] behalf."  *See* SCR: 101-03; *see generally Godinez v. Moran*, 509 U.S. 389, 397 n.7 (1993) (stating that a defendant must be informed of the constitutional rights he is waiving when he pleads guilty—"the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers"

(citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).   Legree confirmed that he understood the rights he was waiving and wished to proceed with the plea.  *See id.*

As discussed above in this opinion, Legree had no federal constitutional right to testify at the grand jury.  Since the ability to appear before the grand jury was not among the constitutional rights he was waiving by pleading guilty, it was not a "direct consequence" of his guilty plea.  The record clearly demonstrates that Legree was advised of, and understood, the direct consequences of his decision to plead guilty.

Further, Legree confirmed multiple times that nobody had forced, threatened, or coerced him in any way to plead guilty; and that he was doing so knowingly, intelligently, and voluntarily.  SCR: 102, 103, 104.  There is no suggestion that Legree was unable to weigh his options rationally.  Indeed, Legree's acceptance of a guilty plea with a sentence promise of the minimum term permitted under the law for a second felony offender (five years) was an eminently rational decision given that he could have been sentenced to fifteen years if convicted after trial.[7]  Legree has failed to show that his plea was anything but knowing, intelligent, and voluntary.

### E.  Defects in the Grand Jury

To the extent that Legree's petition may be read as asserting that the grand jury proceeding was defective because the police witnesses provided false testimony, the prosecutor presented insufficient evidence to support the indictment, and Petitioner did not testify, those claims are foreclosed by his knowing, voluntary, and intelligent guilty

---

[7] Because Legree was a second felony offender as defined in P.L. § 70.06(1)(a), and because P.L. § 265.03 is considered a class C violent felony offense under P.L. § 70.02(1)(b), the mandatory sentencing range was a determinate prison term of at least five years, not to exceed fifteen years.  *See* N.Y. Penal Law § 70.06(6)(b).  Since the state court was required to impose a determinate sentence, it also was required to impose a five-year term of post-release supervision.  *See* N.Y. Penal Law § 70.45(2).  Thus, the sentence offered to Legree in exchange for his guilty plea was the minimum available under the law.

plea.  *See Hutchings*, 260 F. Supp. 2d at 577 (holding that the petitioner's "guilty plea cured any possible deficiency in the grand jury proceeding caused by his failure to testify there" (citing *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court."))).  Since Legree "admitted to all of the factual elements of the charge against him by entering a plea of guilty, any error in the proceeding which led to his indictment is rendered harmless and is not amenable to habeas review."  *Id.* at 578 (citing *Lloyd v. Walker*, 771 F. Supp. 570, 576–77 (E.D.N.Y. 1991)).

## CONCLUSION

For the foregoing reasons, the request for a writ of habeas corpus is denied, and the petition, ECF No. 1, is dismissed.  Because Legree has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

HON. CHARLES J. SIRAGUSA
United States District Judge

Dated:       November  17, 2023
             Rochester, New York.